# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **CELIA JARVIS,** | |
| **Plaintiff,** | |
| *vs.* | **CAUSE NO. 1:13-cv-1373-DKL-RLY** |
| **CAROLYN W. COLVIN, Commissioner of Social Security,** | |
| **Defendant.** | |

## ENTRY

The plaintiff, Celia Jarvis, applied for disability-insurance benefits under the Social Security Act. The defendant Commissioner of Social Security denied her application and she filed this suit for judicial review.

## Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that

1

Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 905. A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(a)(3)(G).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an

administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. ▪ 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Ms. Jarvis applied for disability-insurance benefits in June 2010, alleging a disability-onset date in May 2003. Her claims were denied on initial and reconsideration reviews and she received a hearing before an administrative law judge in October 2011. Ms. Jarvis and a vocational experts testified. In January 2012, the ALJ issued his decision denying her claim. When the Appeals Council denied Ms. Jarvis' request for review in March 2013, the ALJ's decision became the final decision of the Commissioner on Ms. Jarvis' application and the one that the Court reviews. Ms. Jarvis was represented by counsel through the administrative process but she proceeds *pro se* in this suit.

The ALJ initially found that Ms. Jarvis last met the insured status requirements for disability-insurance benefits on March 31, 2006 and, therefore, the relevant period for

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (▪ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

5

determining disability was between her alleged onset date of May 1, 2003 and March 31, 2006, when her eligibility expired.

At step one of the sequential evaluation process, the ALJ found that Ms. Jarvis had not engaged in substantial gainful activity since her alleged onset date.

The ALJ made his disability decision at step two: he found that she did not have a severe impairment or combination of impairments. He found that, while she had the impairments of thrombocytosis and asthma through the date that she was last insured, she did not have an impairment or combination of impairments that limited her ability to perform basic work-related activities for a period of twelve consecutive months.

The ALJ considered her alleged impairments of, and functional limitations resulting from, arthritis, osteoporosis, chronic obstructive pulmonary disease, vertigo, spastic colon, essential thrombycytosis, lung nodule, low-back pain, knee pain, and wrist pain. However, the ALJ found that the impairments were not diagnosed as present, or there was no evidence of resulting disabling functional limitations, during the relevant period. (R. 33-36.)

**Discussion**

Ms. Jarvis makes several arguments.

First, she asserts that she "had more than just Thrombocytosis and Asthma. It take[s] a while to have tests done and show final results. These kind[s] of medical problems do not start spontaneously." (*Plaintiff's Brief* at 1.) The ALJ examined the

evidence for all of her alleged impairments, not just thrombocytosis and asthma. The issue is whether any impairment alone or the combination of all of her impairments resulted in disabling functional limitations during the relevant period. Ms. Jarvis does not assert or show any error in the ALJ's evaluation or conclusion on this issue.

Second, Ms. Jarvis asserts that "[i]t took years before most problems were finally diagnosed. The doctors kept disagreeing with me as to what was going on, then they finally realized I was right." (*Plaintiff's Brief* at 1.) Again, she does not show error in the ALJ's conclusion that the evidence of record does not indicate that her impairments caused disabling functional limitations during the relevant period.

Third, Ms. Jarvis asserts that her physical functions (*e.g.*, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling) were affected and she "no longer could deal with a routine work setting." (*Id.* at 2.) She does not indicate *when* her physical functions were affected or *when* she became unable to work. Even if it were during the relevant period, she has not shown how the ALJ's analysis was not supported by substantial evidence or the product of legal error.

Fourth, Ms. Jarvis states that she "was never sent to any doctor through Social Security." (*Id.*) "They went by records from my doctors and hospital records only. What records they didn't have were ignored entirely." (*Id.*) Ms. Jarvis was represented by counsel during the administrative process and she does not show that she was denied any opportunity to submit relevant records, that she requested and was denied a consultative examination, or that the Social Security Administration was required to send

her to a consultative examination *sua sponte*. She does not show or suggest what consultative examinations she should have received or how such examinations would have produced evidence of a disability existing during the relevant period.

Finally, she asserts that she was unaware that she could have applied for disability benefits in 2003 until she "was forced to file for regular Social Security." (*Id.*) (Presumably, "regular Social Security" means retirement benefits.) She states that, since that time, her health has continued to worsen and has no tolerance for physical functions. While the Court is sympathetic to Ms. Jarvis' currently worsening health status, the Social Security Act and the Administration's regulations constrain the Commissioner to decide her claim for benefits based on her status during the relevant period — between May 1, 2003 and March 31, 2006 — not now, and this Court is similarly constrained to review the Commissioner's decision according to that same law.

## Conclusion

Because Ms. Jarvis has not shown that the ALJ's decision is not supported by substantial evidence or the result of legal error, judgment will issue affirming the Commissioner's denial of her application for disability benefits.

**DONE this date: 09/30/2014**

*[signature]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

8

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.

Distribution *via* first-class mail on:

    Celia Jarvis
    420 W. 5th Street
    Anderson, Indiana  46016